ROBERT KAME, A Minor, by R. B. KAME, His Next Friend, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Division One, January 3, 1914.

1. **DEMURRER: At Close of Plaintiff's Case: Appellate Practice: Waiver.** If the defendant, after its demurrer to plaintiff's case was overruled, went ahead and put in its own proof, its demurrer offered at the end of the case searches the whole evidence, and the first fills no office on appeal. But if defendant's proof does not aid plaintiff's case in chief, it may be inexact to say the first demurrer is waived under such circumstances; it is sufficient to say that the exception to it has become *functus officio.*

2. **NEGLIGENCE: Fire in Railroad Yards: Jamming Train Against Stationary Car.** Where there was a fire at midnight in defendant railroad's yards, and defendant by fire alarm signals summoned the inhabitants of the town to its aid, and a large number of persons responded thereto, and finding their way blocked by a dead train on one of the intervening tracks and there being no other way to reach the burning cars swarmed over and through this dead train, to which no engine was attached, and suddenly, without warning from bell, whistle or otherwise, the engine which had given the alarm invitation, moving up the track for the purpose of removing loaded cars from the range of the fire, was backed by defendant against said dead cars, ramming them with such violence that persons were knocked down, and among them plaintiff, a fifteen-year-old boy, then with others on a coal car with a projecting floor, attempting to cross, there was negligence in the engineer's ramming too hard in making the coupling and in not giving warning signals, and negligence in the fore-

man, who was on the ground and knew of the danger, in not taking steps to give warning or to properly control the train by slow-down signals. If the train was backed into the crowd without control or management, that was stark negligence; if it was under management, whoever was the manager neglected his duty. Under the circumstances, there being no conflict in the testimony, the court would have been justified in declaring defendant negligent as a matter of law in ramming the dead cars.

3. ————: Contributory: Climbing Over Cars: Invitee. What is negligence in one set of facts is not negligence in another; negligence is the absence of due care, and due care is care according to circumstances. It cannot be held that a person summoned by loud fire alarms to aid defendant in an emergency to help save its property from destruction by fire and to be on and about its dead cars and to cross over them, was as a matter of law guilty of contributory negligence in getting upon one of the dead cars in an attempt to reach the fire by the only way available. Such person was not a trespasser, nor a licensee, but an invitee.

4. ————: ————: ————: ————: Notice of Peril: Duty to Crowd as Composite Unit. Defendant, having by its fire-alarm signals summoned the inhabitants of the town to come to its aid in saving its cars and other property from destruction by fire and they having come in large numbers and in trying to reach the fire swarmed over a dead train which barred the only way, cannot excuse itself for injuring plaintiff, one of them, by invoking the rule that the measure of its care was to stop the ramming train after it had notice of *his* peril. The defendant owed a duty to the crowd as a composite unit, not to run the train into it without warning, and such duty distributed itself to each member of the crowd assembled to help it, whether defendant knew plaintiff was present or not.

5. ————: ————: ————: ————: ————: Knowledge of Existence of Curve. If there was a curve in the track between the engine and the crowd, then so much greater was the duty of switchmen, on the ground and train, to signal the engineer as the engine approached to make the coupling with the dead cars over which a crowd was crossing to reach defendant's burning property; and the engineer, having given the alarm signal for the crowd to assemble, must be held to have known of the presence of the crowd and whether a curve in the track or other impediment intercepted his immediate view.

6. ————: ————: ————: ————: ————: Failure to Call Engineer. The unexplained failure of defendant to use as a witness the engineer in charge of the engine and cars which were rammed into the dead cars upon which a crowd assembled

by his alarm signals were clambering and whereby plaintiff was injured, is of significance. Such failure raises a strong presumption that the engineer's testimony would be damaging to defendant.

7. ————: Instruction: Humanitarian Rule: Notice of Peril. If a reasonable man, without seeing, would have just and reasonable cause to anticipate the presence of plaintiff in peril on the track, that fact is in law equivalent to notice and he must govern himself accordingly in meting out due care; and an engineer, who by loud fire-alarm signals has summoned the inhabitants of the town to come and help save the defendant's property from destruction by fire, and knowing that their only way to reach the fire is to cross over a train of dead cars, knows that such signals produce a crowd, and he cannot thereafter act negligently and jam the engine and the cars attached to it against the dead cars and excuse himself on the theory that he did not know the crowd had assembled and were clambering over the dead cars.

8. ————: ————: ————: ————: Actual Knowledge of Foreman. And whether or not the engineer did actually see or know the danger to the assembled crowd, the defendant cannot excuse itself for jamming other cars against the dead cars over which the people by its invitation were crossing to the fire, if the foreman stood by and saw them and ordered the cars moved and the couplings made.

9. ————: ————: ————: No Contributory Negligence: Handicap. Where plaintiff was guilty of no contributory negligence, since what he did defendant invited and expected him to do, an instruction submitting his case on the humanitarian theory is not needed, but serves only to handicap him and weigh down his cause; but the giving of such an instruction, if error, was error against him, and cannot affect his right to have a verdict in his favor approved on appeal.

10. ————: ————: Mutual Error. An appellant cannot complain of error in respondent's instructions which is contained in his own.

11. ————: ————: Youth and Inexperience. Where the situation was confused and the plaintiff was immature and inexperienced, an instruction telling the jury that if they found by reason of those facts that he was not aware of the danger to which he was exposed they should take that fact into consideration in passing upon the question of his contributory negligence, was proper.

12. INSTRUCTIONS: Contrary to Right Theory. Instructions offered by defendant which are contrary to the right theory should be refused.

254 Mo. 12

Appeal from Jasper Circuit Court.—*Hon. David E. Blair*, Judge.

AFFIRMED.

*W. F. Evans* and *Mann, Johnson & Todd* for appellant.

(1)  The court erred in refusing to give the instruction in the nature of a demurrer to the evidence as requested by defendant at the close of plaintiff's case, and as requested by defendant at the conclusion of all of the evidence in the case.  (a)  Because plaintiff was guilty of contributory negligence as a matter of law in attempting to pass between the cars at the time and place, and in the manner he did.  Hudson v. Railroad, 101 Mo. 13; Corcoran v. Railroad, 105 Mo. 399; Bean v. Employers Liability Co., 50 Mo. App. 459; Westbrook v. Railroad, 54 So. 231; Railroad v. Clark, 105 S. W. 384; Howard v. Railroad, 21 Pac. 267; Magoon v. Railroad, 31 Atl. 156; Lewis v. Railroad, 17 Am. Rep. 521; Bird v. Railroad, 48 N. W. 691; Jones v. Railroad, 104 S. W. (Ky.) 258; Rumpel v. Railroad, 22 L. R. A. (O. S.) 725; Studer v. Railroad, 66 Am. St. 39.  (b)  Plaintiff's age, fourteen years, nine months and one week, was such that it was the duty of the court to declare as a matter of law that he was guilty of contributory negligence.  McGee v. Railroad, 214 Mo. 531; Payne v. Railroad, 129 Mo. 405; Herdt v. Koenig, 137 Mo. App. 589; Walker v. Railroad, 193 Mo. 453; Payne v. Railroad, 136 Mo. 562. (c)  Plaintiff did not make out any case under the humanitarian rule, and even though he pleaded in his petition a cause of action under the humanitarian rule, the evidence conclusively showed that he was not entitled to have the case submitted to the jury on that ground, because the evidence fails to show that after he was in a position of peril the employees of defendant operating the train could have averted the injury,

by a reasonable employment of the means at hand, but on the contrary the evidence shows beyond question that after plaintiff took hold of the handhold and started to climb onto the car it would have been impossible to avert the coupling which was the cause of plaintiff being thrown to the ground and injured. The burden was on plaintiff to show this state of facts, and having failed to do so, defendant's demurrer should have been given. Burde v. Railroad, 123 Mo. App. 629; Hudson v. Railroad, 101 Mo. 13; McGee v. Railroad, 214 Mo. 541; Matz v. Railroad, 217 Mo. 298; Dyrez v. Railroad, 238 Mo. 47; Pennell v. Railroad, 153 Mo. App. 566; Koegel v. Railroad, 181 Mo. 379; King v. Railroad, 211 Mo. 14; Hawkins v. Railroad, 135 Mo. App. 524; Davis v. Railroad, 155 Mo. App. 312; Harper v. Railroad, 187 Mo. 588; Gumm v. Railroad, 141 Mo. App. 315; Mockowick v. Railroad, 196 Mo. 570; Markowitz v. Railroad, 186 Mo. 359. (2) Plaintiff's instruction numbered one was erroneous because it was not supported by the evidence, there being not the slightest suggestion in the testimony of any witness that after plaintiff was in position of peril, to-wit, after he had left the ground where he was absolutely safe and had commenced to climb through between the cars, any human power could have averted the coupling which moved the cars and which threw plaintiff to the ground under the wheels. (3) The court erred in giving plaintiff's instruction number 4, telling the jury that although they may believe from the evidence that it would have been negligence in an adult to have climbed over the end of the car, or between the cars as plaintiff did on the occasion of his injury, yet if the jury shall further find by reason of plaintiff's youth and experience, he was not aware of the danger to which he was exposed in doing so, then the jury will take this into consideration in passing upon the question of plaintiff's alleged contributory negligence. (a) This instruction was error,

because plaintiff pointedly testified that he knew that if the cars were moved while he was trying to get over between them it would be dangerous; knew that if they moved the cars while he was trying to get over he might get hurt, and for that reason he looked east and west to see if there was any engine on the track. ' (b)   The instruction was erroneous because plaintiff was of sufficient age and had sufficient knowledge of the danger to make his act in attempting to climb between the cars contributory negligence, and the court should have so instructed.   McGee v. Railroad, 214 Mo. 531; Payne v. Railroad, 129 Mo. 405; Herdt v. Koenig, 137 Mo. App. 589; Walker v. Railroad, 193 Mo. 453; Payne v. Railroad, 136 Mo. 562. (4)   The court erred in giving plaintiff's instruction number 5 attempting to submit the humanitarian doctrine.   (a)   Because the evidence conclusively showed that plaintiff was not entitled to have the case submitted on the humanitarian doctrine, there being no showing that after plaintiff was in a position of peril, i. e., after he left the ground and climbed upon the car, the employees of defendant operating the train could have averted the injury by a reasonable employment of the means at hand; but on the contrary the evidence shows that after plaintiff left the ground and started to climb onto the car it would have been impossible to avert the coupling which was the cause of plaintiff being thrown to the ground and injured. Therefore the instruction was without evidence to support it and for that reason it was erroneous.   Hudson v. Railroad, 101 Mo. 13; McGee v. Railroad, 214 Mo. 541; Matz v. Railroad, 217 Mo. 298; Dyrcz v. Railroad, 238 Mo. 47; Pennell v. Railroad, 153 Mo. App. 566; Koegel v. Railroad, 181 Mo. 379; King v. Railroad, 211 Mo. 14; Hawkins v. Railroad, 135 Mo. App. 524; Davis v. Railroad, 155 Mo. App. 312; Harper .v. Railroad, 187 Mo. 575, 588; Burde v. Railroad, 123 Mo. App. 629; Gumm v. Railroad, 141 Mo. App. 315; Mockowick v.

Railroad, 196 Mo. 570; Markowitz v. Railroad, 186 Mo. 359. (b) And the burden of proving that the injury to plaintiff could have been averted after he was in a position of imminent peril is on the plaintiff. Moore v. Railroad, 176 Mo. 545; Burde v. Railroad, 123 Mo. App. 634. (c) Plaintiff was not in a position of peril until he left the track and commenced to climb upon the car. Moore v. Railroad, 176 Mo. 546; Sissell v. Railroad, 214 Mo. 529. (d) The instruction was erroneous because it tells the jury that if they "find from the evidence that the presence of plaintiff and his perilous position were known to the defendant's agents and servants in charge of the movement of the locomotive and cars, or by the exercise of ordinary care on their part could have been known in time to have avoided injury to him," this not being a case where there was any obligation on defendant until it actually knew of the perilous position of the plaintiff. Hudson v. Railroad, 101 Mo. 13.

*Fielding P. Sizer* and *Thomas & Hackney* for respondent.

(1) The court properly overruled the demurrer, as plaintiff was not guilty of contributory negligence as a matter of law, and that issue was properly submitted to the jury. Wilkins v. Railroad, 101 Mo. 93; Schmitz v. Railroad, 119 Mo. 256; Railroad v. Green, 49 S. W. 670; Butler v. Railroad, 155 Mo. App. 287; Campbell v. Railroad, 175 Mo. 174; Hall v. Railroad, 219 Mo. 589. Here was a boy suddenly aroused from slumber at the midnight hour. He rushes over to the scene of the fire amid the hurrah and clang of whistles and bells. Men of maturity, physically and mentally, were crossing over to the fire and were standing along on top of the cars. While waiting for a chance to cross he looks both ways. He saw no indications and heard no warnings that apprised him of the coming catastrophe, and like any other person, under like cir-

cumstances, undertook to cross or get on top of the car. Here was a trash car in no danger of being burned, and a car (along with others) that was not intended to be pulled out that night, with an end platform over which anyone could pass and upon which anyone could stand with safety, and especially so if the cars had been "pulled out" as witness Parks and Hobbs testified that the warnings given by Hobbs and Lauderdale were to "look out; they were going to pull one." Instead of "pulling the cars on one," as per orders given, they were first jammed back about 20 feet to cripple somebody and then they were "pulled out," leaving the trash car and all cars west of it. Kame and others might well have thought from the situation and from the orders, if heard, that a forward movement was to be made, if any, as a forward pulling of cars could not have injured anyone on the platform where plaintiff was standing, and therefore, it was not negligence to be on the cars. Wilkins v. Railroad, 101 Mo. 93. (2) We deny that plaintiffs age was such that it was the duty of the court to declare him guilty of negligence as a matter of law. McGee v. Railroad, 214 Mo. 546; Payne v. Railroad, 129 Mo. 417; Walker v. Railroad, 193 Mo. 480. A boy is not negligent if he exercises that degree of care which, under like circumstances, would reasonably be expected of one of his years and capacity. Whether he used such care in a particular case is a question for the jury. Vaughn v. Lemp Brew. Co., 152 Mo. App. 48; Burger v. Railroad, 112 Mo. 238; Beach on Cont. Neg. sec. 117; Plumley v. Birge, 124 Mass. 57; Schmitz v. Railroad, 119 Mo. 256; Railroad v. Green, 49 S. W. 670; Anderson v. Railroad, 161 Mo. 411. (c) We deny appellant's charge that no case was made under the humanitarian doctrine. It is claimed by appellant that because no employee actually saw or could have seen plaintiff in time to have avoided the injury, the demurrer should have been sustained. This is not the law in this kind

of case.   Where a train was standing at a highway
crossing and many persons were passing between the
cars going to a fire to the knowledge of defendant's
employees, defendant's negligence did not depend on
notice by the employees that the particular person in-
jured was between the cars, or that his position was
one of peril when the train was moved.   San Antonio
Railroad v. Green, 20 Tex. Civ. App. 5; Holmes v.
Railroad, 207 Mo. 149; Vaughn v. Lemp Brew. Co.,
152 Mo. App. 48.   It would be a monstrous proposi-
tion or doctrine to hold that employees could run and
back a train into and through a crowd of people that
they know is on the cars and crossing continually be-
tween the cars, and simply because the one to get
crushed was not actually seen in a place of danger be-
fore injury by such employees operating the train that
then the humane doctrine cannot be invoked.  2 Thomp-
son on Neg., sec. 1726.   In crowds like this employees
in charge of engines and cars must look out for per-
sons not only on but approaching the track.   Holmes
v. Railroad, 207 Mo. 149; Livingston v. Railroad, 170
Mo. 452.

LAMM, J.—Robert Kame, a minor, sues by *pro-
chein ami* in the Jasper Circuit Court counting on neg-
ligence.   He recovers $10,000 damages, and defendant
appeals.   Below, in its motion for a new trial, defend-
ant complained of an excessive verdict; but the grave
and permanent injuries to the boy, clouding his hopes
and disabling him from the innocent gaiety of youth
as well as the sober duties of mature life, are of such
sort that it is to the credit of defendant's counsel that
they assign no error on that score; hence, that element
drops out of the case above.

Error is assigned on instructions alone, and here-
in of two demurrers to the evidence, one at the close
of plaintiff's (and the other of the whole) case.

The case is this: It was alleged in the petition and denied generally in the answer, but conclusively shown at the trial, as follows: Robert was a minor nearly fifteen years of age and resided with his father. At midnight in September, 1909, a fire broke out in defendant's yards at Monett in some bad-order cars hard by its freight depot and cars laden with merchandise. Defendant at once raised a great clamor of distress by engine fire-alarm signals in said yards, calling for salvage aid from the inhabitants of Monett, a considerable town. Plaintiff and his father were awakened from their slumbers by that alarm and, with many others in like fix, hurried in straggling procession to said fire in response to said fire-alarm invitation. Their way there was blocked by a string of dead freight cars standing on a track, say, fifty or seventy-five feet away. This crowd swarmed through, over and on this string of cars in answering said signals for help, as well as calls for help by defendant's servants engaged in salvage. Plaintiff, bent on said mission, saw people on and passing hurriedly through said string of cars on a like mission, to which cars no engine was then attached. Plaintiff following the crowd through, at that instant of time, without warning from bell, whistle or otherwise to him, suddenly an engine and cars were backed by defendant against said dead cars, ramming them with such violence that persons were knocked down, and, among them, plaintiff, whose leg was thereby cut off by car wheels. As said, there is no dispute in the foregoing particulars. Also, as we view it, the evidence was all one way in proving the following allegations of the petition, the gist of the matter, viz.:

"Plaintiff further states that he was at the time in the exercise of ordinary care, considering his age and the circumstances surrounding him at the time, and that the immediate cause of plaintiff's said injuries was the carelessness and negligence of the agents

and servants of the defendant in managing and controlling said engine and trains of cars as aforesaid and in failing to use ordinary care to protect the plaintiff, and the great crowds of people thus assembled at the invitation and urgent request of the defendant to render all assistance possible to save the property of the defendant, which presence of the plaintiff, together with said concourse of people, and that plaintiff and others were crossing between and over said standing cars, was known to the defendant and the agents and servants of the defendant or could have been known by the exercise of ordinary care by the agents and servants of the defendant in time to have avoided injury to the plaintiff.''

The siding track on which said dead cars stood runs east and west and is called track one. North of said yards lay the main residence district of Monett and plaintiff's father, who was a section man working for defendant, lived north a short distance from the yards. As said, there was no other way for the people from the north to reach the fire and help except to get over or through the dead cars on track one. The west end of track one (a stub track) was used to store cars for repairs. Some such cars were there, and at the east end of them was a car known and used as a ''trash car,'' a coal car with a projecting floor as a platform. This car was used to carry away refuse, hence its name. It was on this car platform, projecting twelve inches or so beyond the end gate, that Robert attempted to cross. Here was the brake rod and wheel and, leading up to it from the ground, was a stirrup to mount and a handhold to help mount. It seems there was neither need nor intention in the emergency to move this trash car; but east of it, and apparently not coupled to it, were cars of merchandise on track one, thus making a string of a dozen or more cars, all of which it was planned to move. This track one headed into a ''lead track'' east a ways, as did sid-

ing tracks two, three, and four, presently mentioned. South of track one, at the point in hand, were some freight sheds running for several hundred feet at about the height of a box car. There were also some freight platforms and a freight depot. Still south of them were tracks two, three and four, on which stood loaded cars to the east and disabled cars to the west. The fire was on the west end of track four among these disabled cars and consumed twenty-five of them. It seems there was urgent need of help to save freight and the very switch engine causing the accident took part in giving the distress whistles to assemble aid. As the fire progressed, there came a time when the loaded cars on tracks two, three, and four had been pulled out. The last cars pulled out on track two were not detached from the switch engine, but, prior to the accident, being pulled east to the lead track, were then backed west on track one to "tie to" the loaded cars stored there. The grade on track one was down to the west. The switch engine doing the work, without any bell sounding or whistle blowing, backed its cut of cars rapidly into these stored on track one, ramming the trash car to the west, some say twenty feet and some eight, some speaking of the jolt as "tremendous." At the precise time, north of, south of, on, between and about these cars and on the freight sheds and platforms were several hundred people. The employees and other helpers, all working on the south side of the dead cars on track one, were at that time hustling freight into them. Plaintiff, coming in from the north looked and could see or hear no engine on track one, and it does not appear that the engineer could see him; but there is no testimony indicating that he (the engineer) did not know of the presence of the composite unit, to-wit, the crowds his signals had helped assemble, and which, as indicated, were south of, on, and north of the cars. The presence of these people seems to have been a conspicuous fact

intentionally brought about, and a necessary result of present conditions. Singularly enough, the engineer and fireman did not testify at the trial. So, whether the train was run back by signals from switchmen or brakemen on the cars or ground, does not clearly appear; but there were such employees moving about on the south side of track one with lanterns at different points; and Hogan, the foreman in charge, had ordered the cars pulled out. Said foreman, so in charge of yard operations that night, at the time of the crash stood south of track one and close to this trash car, and, while he did not see the boy, did see people climbing over at that favorable place, and gave no warning to them. This foreman, Hogan, knew the plan was to run the engine in "to pull track one," but did not expect it so soon. A bit of his testimony is helpful. He puts himself close by at the time of the crash and says:

"A. I saw men all through the yards. Q. You saw them crossing this cut of cars, too? A. I couldn't say. Q. Do you know Warren Bady? A. Yes, sir. Q. The butcher? A. Yes, sir. Q. You was standing there and saw him come over just after the crash? A. I believe I did. Q. You told him he had a narrow call? A. They might say I said that, I don't know. Q. You know he did have a narrow escape? A. I don't know. Q. You were standing right there within a few feet of where they was piling over? A. Yes, sir. Q. Did you have your lantern in your hand? A. Yes, sir. Q. About five minutes before you had heard Hobbs say to his men in the shed they were going to pull, but now you say you had no idea they were going to pull when they did? A. Yes, sir. Q. You knew they were going to hit? A. Yes, sir; I knew what they were doing. Q. Did you tell them to pull it? A. Yes, sir. Q. And you knew they were going to pull it when they did, too, didn't you? A. No, sir;

I don't know as I did, they moved a little faster than under ordinary circumstances."

Some minutes before the boy crossed (Hogan says five and some say more) a yardman had gone along the south side of the cars on track one and warned the other employees engaged in loading them to "look out, they were going to hit." He told the people on the freight platform so and similarly warned some of those on top of the cars. But it is not shown by the testimony that defendant paid attention to the crowd surging in from the north, or to those crossing from the north single file on the narrow platform of the trash car, or that anyone on the north and approaching the cars did or could hear such warning. Indeed it appears that, when this notice was given, the boy was not yet on the ground, and when he came there he saw men crossing on the platform and he did as they did on hearing the calls for help on the south side. Others, as said, were on the platform in the act of crossing at the time he did, and when the crash of the coupling came and plaintiff was thrown between the cars and run over, another person on the car platform was sent sprawling out on the freight platform almost at the foreman's feet. There was also proof on defendant's part that during the fire (and before the crash) there was much confusion at one time or another on the freight platform south of track one, and some cried "look out!" some "water!" some "fire!" some "dynamite!" and some "hollered" generally.

Plaintiff did not come up to the mark of "bright intelligence" commented on in cases. He was not shown to be familiar with railroad operations in switching or the movement of trains in yards. He could neither read nor write, had attended school all told but four months, had no mother and what work he had done had been at spells in odd jobs in peach orchards and strawberry patches.

The assigned errors hinging alone on instructions, the following questions arise:

(1)   Did a demurrer lie to the evidence at the close of the case (and herein of contributory negligence and the humanity rule)?

(2)   Did the court err in giving instructions for plaintiff?

(3)   And err in refusing instructions for defendant?

We are of opinion the judgment stands for affirmance, because:

I.   *Of the demurrers.*

(a)   Attend to two questions lying at the threshold, *viz.*:

(1)   An instruction in the nature of a demurrer to the evidence was asked at the close of plaintiff's case. Being disallowed, defendant marked the spot with an exception, and now argues that the demurrer lay. But defendant did not stand on that demurrer; *contra,* it went on and put in its own proof. Authorities, from whatever angle they approach the subject, agree in holding in effect that where, following such overruled demurrer, another is offered at the close of the case, the latter searches all the evidence and that, for the practical administration of justice, the first no longer fills an office on appeal. It has been said that such demurrer is waived by defendant by the act of putting in its own proof. But if defendant's proof does not aid plaintiff's case in chief, it may be inexact to say the demurrer is "waived" under such circumstances. It is sufficient to hold that the exception saved on the first demurrer became *functus officio,* and the question on demurrer shifts to the second.

(2)   To recover damages in a negligence case a plaintiff carries, as of course, the primary burden of proving negligence on the part of defendant. If such plaintiff have a fair trial in proofs and instructions,

then, unless he successfully takes the first step of proving negligence, he might as well take no other for he cannot have reversal on his own appeal or affirmance on defendant's.

In the case at bar plaintiff well carried the burden imposed upon him by the law in that behalf—so well that defendant's diligent counsel present their case on appeal on a concession of negligence *"in,"* to use their own words, *"moving the cars as they were moved without warning."* However, if that concession had been out of (instead of in) the case, it would have availed defendant's counsel nothing to argue on this record that their client exercised due care or any care at all. The case presents a typical one of inflamed and inexcusable negligence—negligence in its engineer's ramming too hard in making the coupling (for which no excuse was offered) and in his not giving warning signals (for which no excuse was offered)—negligence in the foreman who was on the ground and knew the danger, in not taking steps to either give warning or properly control the train by slow-down signals. If the train was backed into the crowd without control or management, that was stark negligence. If it was under management, then, it is too plain for cavil, that whoever was the manager neglected his duty. The proof is all one way on such propositions, no attempt being made to discredit the witnesses or controvert the facts. Under such circumstances the court would have been justified in declaring defendant negligent as a matter of law in ramming dead cars in the nighttime without warning where (as here) there were a great number of persons on and about the cars, there assembled on its own distress signals to aid in putting out a fire and in saving its own property. We shall have occasion to recur to this subject in considering the question of contributory negligence, leaving it for present purposes with this remark: The large fact of defendant's negligence, i. e., the conceded merits of that phase of

plaintiff's case, must attend the hearing of this appeal from end to end as a guiding factor.

(b)   Let us look into the last demurrer further. Defendant argues it lay because plaintiff was guilty of contributory negligence as a matter of law.  It would seem, however, that when brought to book that argument is fallacious.

(1)   In the first place, courts are fond of saying that what is negligence on one set of facts is not negligence on another, that negligence is the absence of due care, and due care is care according to circumstances.  These trite generalities are apposite, because of the fact that we are cited to many cases holding that, absent discovered peril, if a train of cars is blocking a way it is negligence in law on the part of a person traveling the way to hazard crossing by going under or climbing between the cars, and that an action for injuries received in such daring and foolhardy venture will not lie, even if no warning is given of the movement of the cars.  Such cases will be found in the headnotes to this opinion and we have no crow to pick with them.  However, on principle, it must be apparent that none of those cases are in point on the facts now in judgment.  None of them relate to cases where persons were invited by defendant to be on and about the cars and to cross over them in an emergency to help save its property from destruction by fire.  In such case the persons so invited are not trespassers in so swarming over and through the cars.  More than that, they are not mere licensees.  Nay, more (and most of all) they are invitees in a strict sense and entitled to the protection of due care as conceded by defendant.

This fire was in defendant's yards and among its standing cars.  The dead cars on track one were a barrier in the way of help.  Defendant knew that when it summoned help from the north.  It was bound to anticipate that particular barrier would be surmounted

precisely as it was surmounted by those hurrying to the scene. It did not expect those summoned daintily to pick and choose roundabout ways or to stand on the order of their coming, but it intended them to come, and come at once, to the danger spot. So knowing and expecting, it must govern itself accordingly in meting out due care.

(2) In the next place, it is argued that defendant had no notice of the actual presence of this particular boy, Robert Kame, or of his perilous position and that its duty to exercise due care could arise only on such actual notice and become operative at the instant of time he was climbing on and remained on the platform of the trash car; that the measure of its care was to stop the ramming train if possible after such notice and during such brief interval of time; that it is apparent from the facts that it was impossible to stop the ramming train during that brief interval of time, and that the peril of the boy was not-discovered before his injury. Therefore, they say, as the boy was negligent in attempting to cross the cars, such negligence was the proximate cause of his hurts and there is no room for the application of the humanity rule to relieve him from the effect of his own fault.

But we decline to follow the lead of that line of argumentation. This for reasons now to be set forth.

We think it self-evident that defendant, having assembled the crowd at the precise spot for its own purposes, owed a duty toward the crowd as a composite unit. It had no more right to run a train into that crowd without warning than it had to shoot into the crowd or drive furiously into it with a loose rein. It follows irresistibly from that premise that such duty distributes itself to each individual member of the crowd so assembled for defendant's purposes, whether defendant knew a given individual was present or not. It would be emasculating the case and starving the facts beyond recognition to solve the problem of lia-

bility by ignoring the large fact that defendant had assembled a crowd and that plaintiff was a member of it, or to narrow liability to a mere question of notice of the presence of a given person in the crowd at any particular point of peril. Danger to that crowd was everywhere, duty likewise. The duty was as broad as the danger zone; for duty is a gauge arising with danger. If the crowd was there, if defendant was inviting it to cross the train by cries for help on the other side, as the testimony shows, then the danger was there to those persons collectively and each of them individually and the corresponding duty was there to all and to each, be he John Doe, Richard Roe or Robert Kame.

If, however, a microscopic view is to be taken and it should be held that defendant should have notice at the very instant of time that persons were crossing at the most favorable passageway, to-wit, the platform of the trash car, then it must also be held that the facts show such notice. It is no complete defense to say the engineer did not know. The master had other eyes than his. The foreman, Hogan, the master on the ground, the originating mind and controlling hand, did see and know and that was enough; for his negligence was that of defendant. Nor was the case on the pleadings one merely of negligence for failure to stop the train after the discovered peril of the boy as argued. The allegations of the petition were not pared down so narrowly, but were broad enough to include the backing of the train without engine signals and the backing of it with too much force, as well as without proper care from the foreman who was in charge of its movements.

It was argued at our bar there was a curve on track one which concealed the point of the accident from the engineer. If that be so, then so much the greater reason for switchmen, attentive to their duties, on the ground or train and so situated as to sig-

254 Mo. 13

nal the engineer in approaching the crowd to make the coupling. Nor will it even do to argue that the engineer did not know of the presence of the crowd; there is evidence tending inferentially to show, as we read the record, that this very engineer had taken fruitful steps to procure the presence of that very crowd, and must be held to know of its presence whether a curve in the road or other impediment intercepted his immediate view or not. Do not crowds in towns assemble at fires on signals of distress? Can this engineer shut his eyes to such fact? Or shall he not be held to know that he had succeeded in doing the very thing he set out to do, to-wit, gather a crowd?

It is a familiar principle in the law of negligence that if a defendant create a nuisance, like a pit or an obstruction, say, a city in its street, or where it licenses others to do so, notice of the existence of said nuisance is not an element in determining liability for consequent injuries to individuals traveling where they have a right to go. Why give notice of what defendant itself did, or already knows? [Russell v. Columbia, 74 Mo. 480.]

In this connection the unexplained failure of defendant to use the engineer as a witness is of significance. Plaintiff did not need him to make a case. Defendant did need him to make its defense. "It is familiar doctrine that the failure of an employer to call a witness who was in his employ at the time of the accident, and is presumed to be friendly and to have some knowledge of the accident, without any attempt to explain the reason of the failure, raises a strong presumption that the testimony of the employee would be damaging to such party." [1 Moore on Facts, p. 555, *post* and *ante*.]

The premises considered, we cannot very well write the law to be that Robert was guilty of negligence as a matter of law in being one of a crowd assembled by defendant and in the act of crossing a

string of dead cars in response to an appeal for help on the other side of them, on the invitation of defendant. On the facts of this record, if put to it, we would be inclined to hold there was no evidence of negligence at all on the part of plaintiff or other assembled and invited persons crossing the track, but that would be going further than the case requires to rule the demurrer.

We hold the demurrer well ruled. There is a soundly reasoned case, *quattuor pedibus currit,* San Antonio & Arkansas Pass Railway Co. v. Green, 20 Tex. Civ. App. 5. Other cases sustaining the views announced will appear in the Reporter's head notes.

II.   *Of instructions given for plaintiff.*

Error is assigned in giving three instructions for plaintiff. The scope of the objections is of a character not calling for a reproduction of the instructions, but it will be sufficiently indicated as we proceed.

(a)   In his first instruction plaintiff submitted a phase of the humanity rule. Thus, after putting it to the jury to find this, that and the other fact, it continues in this fashion: "and that the presence of the plaintiff on said car was known to the defendant's agents and servants so in charge of the movement of said cars and locomotives or by the exercise of reasonable care on their part could have been known in time to have avoided injury to the plaintiff, and that by so negligently jamming or backing the said cars or locomotives without such reasonable warning against the car over which the plaintiff was passing, the plaintiff was thrown from the end of said car and that thereby he sustained the injuries complained of, then," etc.

In his fifth instruction the same feature appears.

It is argued there was no room for the play of the humanity doctrine on the facts, hence it was error to give instructions on that theory.

But the argument is without substance, for that:

(1) As heretofore said, it will not do to rule the question solely upon what the engineer actually saw and knew or could actually see and know. If a reasonable man without seeing, or knowing from eyesight, would have just and reasonable cause to anticipate the presence of people on that train and crossing over to that fire, that fact was equivalent in law to notice and he must govern himself accordingly in meting out due care. We so held on the related question of notice of the presence of water in a given hole after a rain. [Benton v. St. Louis, 248 Mo. l. c. 108 et seq.] The peculiar facts of this record justify the conclusion that this engineer, having called people to come from the north, and knowing the fact, common to all men, that fire-alarm signals produce a crowd in a town, he may not thereafter (with the crowd present and necessarily in danger in the yards and about the dead cars) act negligently and excuse himself on the theory he didn't know the very thing had happened he had tried his level best to bring about, to-wit, a stream of people crossing over to the fire.

(2) But as already pointed out, defendant cannot excuse itself on the theory the engineer did not actually see and know the danger to persons. Its foreman was its *alter ego*. He knew a string of people was passing over the platform of the trash car. He had ordered the cars moved and the couplings made and was bound to use due diligence to take care of a situation so full of peril which he had also helped create. Let it be conceded there was uproar and excitement; moreover, that there was an emergency to save property loss from flames; yet over and above mere property loss, and dominating the situation, was the paramount duty to not negligently sacrifice life and limb. When, in a court of justice, the man is fairly in the balance with the dollar, as would be the case on that hypothesis, then it is not sentiment only

but cold clear law to say that the man goes down in the scales and the dollar kicks the beam. The man comes first in the law. It is one of the glories of the law that it is so written in the books.

(3) But there is a deeper-going view, namely, I am unable to see any evidence of contributory negligence in this boy at all. What he did defendant invited him to do and expected at his hands, hence the introduction of the issue of contributory negligence in these instructions merely handicapped plaintiff and weighted down his cause. As put in Berry v. Railroad, 214 Mo. l. c. 604, ''To allow a litigant who has had the advantage of his antagonist's assuming unnecessarily a laboring oar, to bottom a right on appeal on that advantage, would be the same as if B, distanced in a foot race, would challenge the event because A, who won the money, chose to carry weight in the sprint or was too fat to run well.'' Hence, if error it was, it was error against plaintiff and not against defendant. It cannot affect the merits on appeal and coerce a reversal.

(4) Added to the foregoing is the fact that in some of defendant's instructions the same theory is put to the jury, in such case the rule is that an appellant cannot complain of mutual error, if error it be. [Lange v. Railroad, 208 Mo. l. c. 475.]

(b) Complaint is made of plaintiff's instruction number four. In substance it put to the jury the proposition that if they found that by reason of plaintiff's youth and inexperience he was not aware of the danger to which he was exposed in climbing over the end of the car, then they should take that fact into consideration in passing upon his contributory negligence. We see no fault with this instruction. The situation was confused and not simple. The boy was immature and inexperienced and there is no respectable authority that would tolerate eliminating that element on the question of his contributory negligence. The cases re-

lied on by defendant were not ruled on the facts of such a record as this.

III. *Of instructions refused for defendant.*

Instructions were refused for defendant that took a different view of the law of the case than embodied in the conclusions hereinbefore announced. Hence they were properly refused.

Perceiving no reversible error, it must be held that the case was well tried and well decided. Accordingly, let the judgment be affirmed. It is so ordered. All concur.