ALICE C. MULLERY, Respondent, v. MISSOURI & KANSAS TELEPHONE COMPANY, Appellant.

Kansas City Court of Appeals, May 24, 1915.

1. NEGLIGENCE: Master and Servant: Safe Place to Work: Rest Room for Servants. Where a master provided a rest room in which the telephone operators were required to go at stated periods during the day and rest as part of their duties, an operator, who, when the rest period arrived, had left the board and gone to the rest room as required was still in her line of duties and was required to be in the regular performance of her work. In such case the duty rested upon the defendant master to see that the rest room was maintained in a reasonably safe condition.

2. ———: ———: ———: ———. The master cannot delegate to an independent contractor the duty to use reasonable care to furnish his servants with a reasonably safe place in which to work. Where one is charged with a duty arising

from a legal obligation which he cannot devolve upon another, the rule as to independent contract does not apply.

3. **PLEADING AND PROOF: Acts of Negligence.** Where a plaintiff pleads and proves two or more negligent acts and proves that his injury must have been the direct result of one or all of them he is not required to go further and distinguish by proof the particular one that caused his injury. To satisfy his burden, it is enough for him to show that his injury resulted from a specified wrongful act of defendant.

Appeal from Buchanan Circuit Court.—*Hon. Chas. H. Mayer,* Judge.

AFFIRMED.

*D. E. Palmer, W. B. Morris* and *Broaddus & Crow* for appellants.

*Mytton & Parkinson* for respondent.

JOHNSON, J.—Plaintiff sustained personal injuries while in the service of defendant as a telephone operator, and sued to recover damages on the ground that her injuries were caused by negligence of defendant in failing to exercise reasonable care to furnish her a reasonably safe place in which to work. Defendant maintained a rest room in its building for the use of female employees and the operators of the switchboard, of which plaintiff was one, were required to retire to this room at fixed periods during the day for rest and relaxation. There were two rows of metal lockers in the room on a balcony which extended along the north wall at a height of six feet above the floor. One row stood against the north wall, the other across a narrow aisle with the backs of its lockers facing the room. The lockers were for the use of the employees and the aisle between the rows was reached by steps leading from the floor of the room to the west end of the balcony. There was a space of three or four feet between the east end of the balcony and the east wall. The door

to the room was opposite this end and in entering or leaving the room a person would pass under the balcony at its southeast corner. Plaintiff had entered the room during a rest period and was standing by a table some distance out from underneath the balcony when a section, consisting of three lockers, fell into the room from the outside row and struck her on the head and left shoulder, inflicting the injuries of which she complains. Alterations in the interior of the building had been in progress for some time and among the changes contemplated by defendant was the removal of the balcony from the rest room. The alterations were being made by a contractor under an independent contract with defendant which required the removal of the balcony but did not mention the preliminary task of removing the lockers. Defendant's superintendent contended that it was the duty of the contractor to perform that task and the latter seems to have acquiesced in that construction of the contract. In any event one of his foremen and a helper proceeded to the balcony a short time before the injury and started to remove the clothing of the employees from the lockers and to take off the doors which swung on pin hinges and were easily removed. The helper was carrying an armful of clothing from the lockers into the room and the foreman had slipped one door off the hinges when the section of three lockers at which they were working toppled over and fell into the room. The lockers had been constructed with feet provided with holes for attachment to the floor with screws but when they were put into place a year or more before the date of the injury the rear feet had been taken off and the front feet had not been screwed to the floor. The top of the row leaned against and was kept in place by, the beveled edge of a ceiling beam. After the fall of the section there were marks on the floor made by the scraping of the front feet which indicated that the lower end of the section had slipped towards the aisle until

the top had receded below the line of the beam, thus leaving the section without necessary support.

The gravamen of the charge of negligence in the petition was the failure of defendant to maintain the rest room in a reasonably safe condition for the use of plaintiff, its servant, but the petition went further and specified a particular act of negligence as the cause of the action upon which a right to recover damages was predicated, viz., the negligent construction and maintenance of the outer row of lockers without attachment to the floor of the balcony or the top support to prevent the legs from slipping forward.

The defense was a general denial and pleas of assumed risk and contributory negligence and the non-liability of defendant on the ground that the negligence, if any, which caused the injury, was the negligence of an independent contractor. A trial of these issues resulted in a verdict for plaintiff in the sum of $10,000, which was reduced by remittitur to $5000, and judgment was entered for the latter sum. Defendant appealed and we reversed the judgment and remanded the cause on the ground that the evidence of plaintiff failed to show that the specific act of negligence alleged in the petition was the cause of her injury. [See 180 Mo. App. 128.] We said in the opinion: ''The inference to be drawn from the evidence is that so long as the lockers remained as installed, they were safe, but, on account of the method of their construction, the work of taking them down rendered it obviously necessary to observe precautions to prevent them falling during the progress of their removal. On account of the way they were constructed any attempt to remove them without steps being taken to prevent their fall was negligence and thereby the room was rendered dangerous and unsafe. The method of construction no doubt was the remote cause of the fall, but the proximate cause was the effort to remove the locker standing in that situation without taking any precautions what-

ever to prevent its falling. At least such is the reasonable, natural and, therefore, only permissible inference to be drawn from the evidence. Even if the evidence be considered such that the locker may have fallen either from a negligent original construction or by reason of the preparations to remove it, still, if the evidence leaves it uncertain which of the two causes produced the fall, and the petition has specified only one of such possible causes, then there is a failure of proof, because it is incumbent upon plaintiff to make out her case not only by showing the particular act of negligence specified but also that the one specified was the direct and proximate cause of the injury. The evidence must be such as will reasonably show, or at least will support a reasonable inference, that the act pleaded was the proximate cause. This cannot be left to conjecture or arbitrary choice.'' The case was remanded to give plaintiff an opportunity to amend her petition ''in such manner as to support and come within the evidence.'' We did not hold there was no evidence of negligent construction as alleged but that the proof did not tend to show a direct causal relation between such negligence and the injury, and did tend to show that the direct cause was negligence in proceeding with the work of removing the lockers without taking into account and properly guarding against the dangers that might arise in the prosecution of the work from the negligent way in which the lockers had been emplaced.

After the cause was returned to the circuit court plaintiff amended her petition by adding another specification of negligence, i. e., that ''defendant carelessly and negligently caused and permitted said lockers so carelessly and negligently maintained to be worked upon, in and about preparatory to removing the same, and that the removal of the same from the balcony and the work and acts done preparatory to and in preparation for the removal of the same from the

balcony rendered the rest room dangerous and unsafe for the use of the employees, that the defendant carelessly and negligently failed to take any precautions for the safety of its employees using said rest room while said lockers were being worked in, about and upon preparatory to removing same."

As thus amended the petition specified two particular acts of negligence from which, singly or together, the injury directly resulted, i. e., negligent construction and negligence in not taking proper preventive steps, under all the circumstances of the situation, to maintain the place where plaintiff was required to be, in a reasonably safe condition.

The answer presented the same defenses as before and a re-trial of the cause on substantially the same evidence we considered on the former appeal resulted in a verdict and judgment for plaintiff in the sum of $6000, and defendant again appealed. The principal contention of defendant is that the evidence of plaintiff fails to present a case for the jury and that the demurrer should have been given.

There is no evidence in the record from which a reasonable inference could arise that plaintiff was guilty of contributory negligence or that she assumed the risk which culminated in her injury. It was her duty, prescribed by defendant, her employer, to return to the rest room and remain there during that rest period. She had no knowledge, nor had she been in position to know, of the manner in which the lockers had been placed in position and were being supported, nor did she know that workmen had started to remove them. She had no reason to anticipate any danger or that her employer had been or would be remiss in the performance of its duty to exercise reasonable care to maintain this place for rest and relaxation in a reasonably safe condition. How she could have been guilty of any negligence in occupying the room in the usual manner and in assuming that it was a safe place,

has not been, and could not be, made apparent. On the hypothesis that the fall of the lockers was due to one or both of the pleaded acts of negligence the risk created by such negligence was not assumed by her, since it is too well settled in the jurisprudence of this State to require the citation of authorities that a servant does not and cannot assume risks of injury caused by his master's negligence.

And we repeat what we said in the former opinion that whether or not the work of preparing to remove the lockers was being done by an independent contractor is immaterial, since the duty of defendant to exercise reasonable care to provide a reasonably safe rest room for the use of plaintiff was an absolute duty which could not be delegated to another in a manner to relieve defendant from responsibility for its proper performance and liability for its negligent non-performance. [Morton v. Dry Goods Company, 126 Mo. App. 377; Long v. Moon, 107 Mo. 334; Herdler v. Stove Co., 136 Mo. 1. c. 16.] The case on the demurrer to the evidence is reduced to this question: Does the evidence of plaintiff tend to show that a pleaded act of negligence was the proximate cause of her injury?

That the fall of the lockers was due to negligence of defendant is well established by proof. The evidence is circumstantial but the inference of negligence has a complete and perfect evidentiary foundation and does not depend in any degree upon the rule of *res ipsa loquitur,* or any other presumption. As a rule that presumption cannot be invoked in a master and servant case (Hamilton v. Railway, 123 Mo. App. 619) though there are cases where it will arise. [Klebe v. Distilling Co., 207 Mo. 480.] It cannot be applied in cases where particular acts of negligence are pleaded. [Mullery v. Tel. Co., supra, 1. c. 135, and cases cited.] As stated, plaintiff's case does not rest in part upon a presumption of negligence based upon the mere fact that the lockers fell and would not have fallen if they had been

properly maintained, but upon facts and circumstances which, if true, show that they were negligently installed and maintained in being placed on the outer edge of the balcony without any attachment, and that, without taking any steps to keep them from becoming displaced and falling, defendant set men to work upon them thereby rendering them unstable and causing them to fall.

It is noted in Hamilton v. Railway, supra, l. c. 623, that there are master and servant cases where the occurrence in question is of such a nature as to bespeak an origin in the master's negligence without the aid of a presumption, and in such cases proof of the occurrence is held to be sufficient prima-facie evidence of negligence. "The occurrence shown may be of that nature which could not in any degree of probability have happened without a negligent cause. Its proof is tantamount to the direct and affirmative proof of negligence." The existence of negligence may be shown by circumstantial evidence and where the circumstances disclosed afford direct support for an inference of negligence without resort to presumptions a prima-facie case is made out. In the present case the evidence clearly and explicitly points to the physical causes of the fall of the lockers and on the issue of negligence leaves nothing to conjecture or presumption. The rule of *res ipsa loquitur* is not in the case.

But defendant endeavors to utilize our former decision in a way to defeat plaintiff in detail. It treats the issue of negligence tendered in the original petition as having been finally settled against the plaintiff and, therefore, as *res adjudicata,* and, regarding the new issue raised in the amended petition as the only issue of negligence remaining in the case, attacks the sufficiency of the evidence to support it. Defendant's position is found to be inconsistent, in view of our finding in the former decision from exactly the same evidence we now have before us, that "not only does

the evidence fail to show that negligent construction was the proximate cause of the injury but the inference is that the proximate cause was the attempt to remove them.'' If our decision conclusively settled the issue that negligence in the installation and maintenance of the lockers was not the proximate cause, it just as conclusively settled the question of the sufficiency of the facts and circumstances in proof to raise an inference that negligence in the attempt to remove the lockers was such cause, and defendant should not be allowed to escape liability on the theory that the decision closed all questions decided in its favor but left open those decided against it.

We think defendant misinterprets the scope of the former decision. We did not exclude the issue of negligence in the maintenance of the lockers from the case but merely held that the proof was insufficient to show with requisite definiteness that such negligence was the proximate cause of the injury. We found that the most one could say in favor of plaintiff's evidentiary situation was that she had shown that the fall of the lockers was due to one of two negligent causes, only one of which was alleged in the petition, and we rightly concluded that ''if the evidence leaves it uncertain which of the two causes produced the fall and the petition has specified only one of such possible causes, then there is a failure of proof because it is incumbent upon plaintiff to make out her case, not only by showing the particular act of negligence specified, but also that the one specified was the direct and proximate cause of the injury.'' If the petition, then, as it does now, had specified the two acts of negligence as having caused the injury, either singly or conjointly, we would have held as we now hold, that proof of the existence of both acts, with proof that one or the other must have been the proximate cause, was sufficient to take both to the jury to determine which of the two was such cause. Where a plaintiff pleads

and proves two or more negligent acts and proves that his injury must have been the direct result of one or of all of them, he is not required to go further and distinguish by proof the particular one that caused his injury. To satisfy his burden, it is enough for him to show that his injury directly resulted from a specified wrongful act of defendant.

· The scope of the action as presented in the amended petition properly embraced the two pleaded acts of negligence and since the evidence of plaintiff, even in defendant's view of it, tends to show that one of the two acts was the proximate cause, plaintiff discharged her burden of proof, and the court did not err in overruling the demurrer to the evidence. In what has been said we have answered the objections to the instructions given at the request of plaintiff. There was no prejudicial error committed at the trial.

But we agree with defendant that the verdict was excessive. Plaintiff is twenty-three years old, was in good health at the time of her injury and is in good health now, except for an occasional headache followed by a nervous chill. She was struck on the head and shoulder and was unconscious a few moments. No bones were broken and no serious or lasting injury was inflicted to her head. The most serious injury she sustained was a nervous shock which developed into a mild form of neurosis from which her own expert witnesses say she will have a complete recovery, though she had not fully recovered at the time of the last trial. She was confined to her bed two or three weeks after the injury and occasionally thereafter was ill in bed from attacks of headache and nervous chills, but she has been employed as clerk in different business places a large part of the time since her injury and has been quite active in her social life. To all outward appearances she is normal, healthy and endowed with rather more than ordinary youthful spirits and zest. Apparently she is popular socially for the evidence

shows that night after night she attended theaters, parties, dances, club meetings and other social functions and participated in the activities of such gatherings. We fully appreciate the gravity and obstinacy of nervous diseases but considering the facts that her neurosis, if it exists, is described by her physician as slight, that it is of traumatic origin and temporary, and that it has caused so little interruption of her normal activities, we think a verdict of $6000 is clearly beyond the bounds of reason and that $4000 would be the maximum limit of a reasonable assessment of damages. On condition that within ten days from the filing of this opinion a remittitur of $2000 and accrued interest thereon be filed by plaintiff, the judgment will be affirmed; otherwise it will be reversed and the cause remanded. It is so ordered.

All concur.