JOHN KAUTZ, Respondent, v. ST. LOUIS REFRIG-ERATOR CAR COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed March 2, 1920.

1. MASTER AND SERVANT: Negligence: Failure to Furnish Safe Place to Work: Evidence: Question for the Jury. In an action for damages by an employee sustained while engaged in rolling large, heavy car wheels having flanges, through a narrow passageway, and one of the wheels came in contact with another which had been placed in the passageway in such position as to be unstable and likely to fall if struck or scraped by a rolling wheel, and the two wheels fell on his right leg crushing it and necessitating its amputation above the knee, held that the evidence suffices to support the conclusion that defendant was remiss in respect to the duty which it owed plaintiff to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work and to keep that place safe, and a demurrer to the evidence offered at the close of the case was rightfully overruled.

2. ——: ——: Duty of Master to Keep Place to Work Safe Non-delegable. Where an employee was engaged in rolling large, heavy car wheels having flanges, through a narrow passageway, etc., it was the nondelegable duty of defendant to exercise ordinary care to keep the place reasonably safe for the performance of the task in which plaintiff was engaged; and the evidence warrants the finding that defendant breached its duty in this regard.

3. ——: ——: ——: Master's Representative Required to Keep Place to Work Safe. Where an employee was engaged in rolling large, heavy car wheels through a narrow passageway and was performing his duties under the direction and control of the master's representative, it was the duty of the master's representa-tive to see that the place where plaintiff was thus required to work was kept reasonably safe; this being a personal duty which the master cannot delegate so as to escape liability in case of an injury by reason of its nonperformance.

4. ——: ——: Fellow Servants: Acts of Superior Servant: Master's Alter Ego: Liability. Evidence held ample to warrant the in-

ference that the master's representative under whose direction and control plaintiff was engaged in rolling large, heavy car wheels through a narrow passageway, etc., and who placed another wheel in the passageway in such position as to be unstable and likely to fall if struck or scraped by a rolling wheel, etc., was the master *alter ego*, having full charge of the work and control over the place where it was being performed.

5. ———: ———: ———: **Superior Servant's Negligence: Efficient Cause of Injury: Master Liable.** Even though the master's representative was a fellow servant of plaintiff in respect to the manual work of rolling wheels, this is not a matter of consequence since plaintiff's injury did not occur from negligence of the master's representative in the capacity of fellow servant.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Nagel & Kirby* and *Charles P. Williams,* for appellant.

(1) The dual capacity doctrine is the settled law of this State. English v. Rand Shoe Company, 145 Mo. App. 450. The claims of the defendant rest either upon the theory of distinct departments or upon the theory that the act complained of was the act of a vice-principal. The men were consociated in a common task. Card v. Eddy, 129 Mo. 518. The demurrer should have been sustained. The negligent act complained of was an act of manual labor of the same species and to the same end as that being performed by the plaintiff, and the master is not liable. Lee v. Beloit Bridge Works, 62 Mo. 565, 567; Stephens v. Lumber Company, 110 Mo. App. 398; Rogers v. Schiele, 148 Mo. App. 53; Dickinson v. Jenkins, 144 Mo. App. 132; Hawk v. Lumber Company, 166 Mo. 121; Padgitt v. Iron & Steel Company, 160 Mo. App. 544; Richards v. Mesker, 171 Mo. 666; English v. Rand Shoe Company, 145 Mo. App. 439; Freebourn v. Chamberlain Medicine Co., 136 Iowa, 434; Gann v. Railroad, 101 Tenn. 380; Findlay v. Russell Wheel Co., 108 Mich. 286; Beckstein v. Gall, 173 Ill. 187, 69 Ill. 616;

Allen v. Goodwin, 92 Tenn. 385; Burke v. Rubber Co., 21 R. I. 446; Richmond Locomotive Works v. Ford, 94 Va. 627; Kliegel v. Weisel & Vilter Mfg. Co., 84 Wis. 148; Foley v. Railway Co., 64 Iowa, 644; Cashman v. Chase, 156 Mass. 342; Riono v. Rockport Granite Co., 171 Mass. 162; Flynn v. Boston Light Co., 171 Mass. 395; McQueeny v. Railway Co., 120 Iowa, 522; Dimarcho v. Builders Iron Foundry Co., 18 R. I. 514; Ricks v. Flynn, 196 Pa. 263; Allen v. Cooper Co., 3 Alaska, 651; American Telegraph Company v. Bower, 20 Ind. App. 52. (2) Instruction Number 1, given for the plaintiff, ignores vital issues, draws misleading distinctions and is erroneous. (3) Instruction Number 2, given by the court for the plaintiff, ignores vital issues, purports to be complete instruction covering whole case and erroneous. Hall v. Manufacturers' Coal & Coke Co., 260 Mo. 351.. (4) The court erred in giving to the jury the instruction for plaintiff. numbered 4. It is misleading and conveys an erroieous impression of the duty of the defendant. Hensen v. Stave Co., 151 Mo. App. 244; Dunn v. Nicholson, 117 Mo. App. 374. In common with nearly all the other instructions for the plaintiff, it contains indefinite reference to other instructions. Drumm v. Bank, 92 Mo. App. 333. (5) Instruction Number 1 for the plaintiff and Instruction Number 1 for the defendant are conflicting and inconsistent.

*O. J. Mudd* for respondent.

(1) The act of French in placing the wheel against the lathe, whence it fell and injured plaintiff, was not, as far as concerns plaintiff, the act of a fellow servant, but was the act of a vice-principal. Mertz v. Rope Co., 171 Mo. App. 94; Propulonris v. Const. Co., 213 S. W. 792; Morin v. Rainey, 27 S. W. 858, 869; Bradshaw v. Standard Oil Co., 199 Mo. App. 688; Most v. Goebel Const. Co., 199 Mo. App. 336; Gibbs v. Duvall, 201 S. W. 605, 607; Goerner v. Car Co., 209 Mo. 141; White v. Montgomery, etc., Co., 191 Mo. App. 268; Strother

v. Milling Co., 261 Mo 1; Gale v. Mill Co., 159 Mo. App.
639; Jorkiewics v. Brake Co., 186 Mo. App. 534; Miller
v. Railroad, 109 Mo. 356; Bien v. Transit Co., 108 Mo.
App. 399; Edge v. Railway Co., 206 Mo. 494. (2) French
and plaintiff were not always, or at all points, fellow
servants even in the work of unloading the car.  Bien
v. Transit Co., 108 Mo. App. 399; Note—I think the
above is the best considered case in the State of Mis-
souri and has been adopted and approved by the Su-
preme Court in Edge v. Railway Co., 206 Mo. 493-4,
and Strother v. Milling Co., 261 Mo. 16; Edge v. Rail-
way Co., 206 Mo. 494; Hollweg v. Telephone Co., 195
Mo. 156; Morin v. Rainey, 207 S. W. 860.  (3) It was
not plaintiff's duty to be on the lookout for dangers
to him while rolling the wheels.  Hawkins v. Railroad,
189 Mo. App. 210.  (4) The right of direction and con-
trol exercised by French towards plaintiff made him as
to plaintiff a vice-principal.  Bien v. Transit Co., 108
Mo. App. 339; Mertz v. Rope Co., 174 Mo. App. 103
et seq.; Gibbs v. Duvall, 201 S. W. 607.  (5) "The neg-
ligence of Rainey (French?) in rendering unsafe the
place where plaintiff was expressly required to work at
the time, was, in law, the negligence of the master
casting liability upon the latter for the consequences
thereof."  Morin v. Rainey, 207 S. W. 861.  (6) The
right to "hire and fire" is not essential or necessary
to the capacity of a vice-principal, nor does it matter
that Littell was in authority over all.  Gibbs v. Duvall,
201 S. W. 607.  (7) If the arrangement or preparation
of the "place" of work was to be done by French and
plaintiff both, and French had and exercised at the
time authority over plaintiff to direct and control him,
then French was a vice-principal in such work, and if
pursuant to such capacity he put the wheel against the
lathe, or even had he directed plaintiff to do it, and
that act endangered the "place," the act was the negli-
gence of the master.  Miller v. Railroad, 109 Mo. 356.
(8) French had and exercised the authority to direct and
control plaintiff at all times when working with him on
the day of his injury.  Plaintiff so testified and the

jury so found, and this fixes the fact so for the purposes of this appeal. He, therefore, was not a fellow servant with plaintiff. Burkard v. Rope Co., 217 Mo. 450; English v. Shoe Co., 145 Mo. App. 451; Mertz v. Rope Co., 174 Mo. App. 94; Jorkiewics v. Brake Co., 186 Mo. App. 534. (9) If the placing of the wheel by French against the lathe rendered the "place" of the work dangerous, "it would seem to be a detail of such importance and of such character, as to be chargeable to the duty of the master." Gibbs v. Duvall, 201 S. W. 607 (citing Labatt on Mast. and Ser., sec. 1516, page 4545); Koerner v. Car Co., 209 Mo. 157 et seq. (10) Appellant having joined with plaintiff in submitting to the jury the issue of fellow service is estopped to claim error of the courts in overruling his demurrer on that point. Schenf v. Fries, 77 Mo. App. 360; Berkson v. Cable Ry. Co., 144 Mo. 219-220; Water Co. v. City of Neosho, 136 Mo. 508; Barr v. Hayes, 172 Mo. App. 600; Distilling Co. v. Wilson, 172 Mo. App. 618-619. (11) In arguing in this court the propriety of the ruling of the trial court on a demurrer to the evidence, plaintiff's evidence must be held to be true and defendant's evidence untrue. Williams v. Railroad, 257 Mo. 111-112. (12) Defendant, by putting in evidence, after the court's overruling his demurrer to the evidence offered at the close of plaintiff's evidence, waives the rights to have the plaintiff's 'case tested on plaintiff's evidence alone. Stauffer v. Railroad, 243 Mo. 305, 316; Whiteaker v. Railroad, 252 Mo. 450. (13) The duty of the master to make and keep safe the "place" of work is a non-delegable duty of the master which he cannot cast off to the shoulders of other persons. Morin v. Rainey, 207 S. W. 858, 861; Koerner v. Car Co., 209 Mo. 141, 151; White v. Montgomery, etc., Co., 191 Mo. App 268; Chulick v. American Car and Foundry Co., 199 S. W. 437; Zellars v. Water Co., 92 Mo. App. 107, a much-cited case.

REYNOLDS, P. J.—Plaintiff, while in the employ of defendant and engaged in unloading car wheels from

a car and placing them in one of the departments of defendant's plant, rolling a wheel, came in contact with another wheel, which was standing in the passageway, leaning against a lathe, and the two wheels fell on his right leg, crushing it and necessitating its amputation above the knee. Placing his damages at $20,000, plaintiff recovered a verdict for $7500. Judgment following, defendant has duly appealed.

The charge of negligence in the petition upon which the case was tried is, that defendant, through its employees, then and there by defendant intrusted and charged with the duty of providing plaintiff a reasonably safe place to work, "did negligently place a certain large iron wheel, hereinafter referred to and designated as the stationary wheel, alongside and near to the passageway over which plaintiff was at the time of receiving the injuries herein described and pursuant to his said employment so engaged in moving and transferring said car wheels, in so careless and negligent and unskillful a manner as to be liable to topple over and fall upon and into said passageway, over and along which plaintiff was so engaged at his said work. That said stationary wheel had been and was so placed in an approximately upright position, and so slightly leaning as to be near a balance, and resting against and supported by a certain machine stationed, then and there, in said machine shop, and near to the said passageway, so that it was by reason of its approximate balance and great weight, liable in the ordinary course of the work of rolling and transferring the wheels out of said car and along the said passageway, to be jarred and struck and to fall over in said passageway and injure plaintiff. That in addition to being so leant against the said machine in said approximately upright position, as aforesaid, said stationary wheel was so placed and leant against said machine with the tread or heavy side of the same outwards and towards the said passageway along which plaintiff was, by defendant's order, so set to work, and so that the said stationary wheel, thus care-

lessly and negligently placed and leant against said machine adjacent to and alongside of said passageway, was by reason of its said position and the said manner thereof, liable to fall or to be knocked over, in the ordinary course of the work of moving said wheels along said passageway, and to fall so as to strike persons and the plaintiff performing the said work.''

The answer, after a general denial, avers, first: Contributory negligence in carelessly and negligently rolling a car wheel against another car wheel, causing both to fall on him; then, that placing the car wheel in position was the act of a fellow servant of plaintiff engaged in a common work with plaintiff; third, assumption of risk.

The reply denies the allegations of new matter in the answer.

There was evidence in the case to the effect that defendant owned a factory in the city of St. Louis, composed of several separate departments; one, a carpenter department, in which plaintiff usually worked; another, the mechanical or axle department, in which plaintiff was working at the time of the accident, working there under the immediate charge of one James L. French, referred to throughout as ''Jim'' French. On September 14, 1914, plaintiff, on reporting for work to the general foreman, one Littell, was told by Littell to go over to the axle department and help Jim French unload a carload of wheels. French was what was called a ''wheel man,'' and immediately in charge, under Littell, as foreman of the wheel department, as it is called, of defendant's plant. The work of this department consisted of turning axles and boring wheels, after which fitting the axles. Unloading car wheels from the cars and placing them in proper position for being worked upon, were also part of the duties of the men working in it. French had a helper whose duties were to run the lathe and help roll the car wheels and assist at all times. As noted, the usual duties of plaintiff were in the carpenter department, but on this occasion he was

put to work in what was called the axle or mechanical department or shop, at the time acting as helper to Jim French, the regular helper, Louis French, being absent. Preliminary to unloading the car, under direction of French, plaintiff had built a stage and runway from the car to the shop and had cleaned up some blocks which were lying in the passageway. While he was doing this, French had moved a car wheel from a rack within the shop, which had been placed there a day or so before and was not of the wheels to be then unloaded, and had stood it against a lathe alongside of the passageway through which the wheels were to be rolled. This wheel was placed there by French, he intending to work on it the following Monday. It was set on edge against a lathe with the flange next to the lathe and the bottom of the wheel about 8 or 9 inches away from the bottom of the lathe, leaning against the pan of the lathe, which was above the middle of the hub of the wheel. The passageway through which the wheels being unloaded were rolled ran along past this wheel. On the occasion of the accident, the runway made and some blocks cleared out of the passageway, French and plaintiff began taking the wheels out of the car and rolling them to the racks in which they were to go. Plaintiff would go to the car, take a wheel out and roll it to the place where it was to go. French had directed where the wheels were to be placed. Plaintiff, as helper, had nothing to do with that. The wheels, when taken from the car, were rolled in a winding way around the machinery to a rack at the west side and back of the lathe. The passageway through which the wheels were rolled was wider in some places than in others, being from two to six feet wide. There was a track on one side and machinery on the other. French had gone into the car, taken a wheel and rolled it down the stage plank and into the building and over into the rack. Plaintiff waited until French had his wheel and then he followed. He had rolled several wheels into place. When he took hold of the wheel, he

rolled it inside of the building and in going around a zig-zag bend that formed the passaeway, the wheel became unbalanced and "wobbled." He tried to straighten it up as well as he could; slacked up on it and had it pretty well stopped when he was passing the wheel that had been placed against the lathe by French, and his wheel scraped it on the bottom. Plaintiff testified that he had not seen that wheel sitting there; had not noticed it before and had not thought of it tumbling over; thought it was safe inside the shop. When his wheel scraped against the bottom of the wheel leaning against the lathe, that wheel fell over and hit the wheel he was rolling and it was too late for him to save his left leg but he pulled his right leg out. The two wheels fell so fast that he did not see them coming. The wheel sitting against the lathe stood upright, said plaintiff, and "almost fell over with the shaking of the floor." It was sitting against the lathe with the flange or tread on the outside towards the wheel he was rolling, that is towards the passageway through which he was rolling the wheel. The wheels crushed his left leg above the knee. He hallooed, when French and others came and took the wheels off of him, sent for a doctor and carried him home, where he was laid up for five months, his left leg being amputated above the knee.

The wheels weighed about 600 pounds each.

Plaintiff had worked for defendant about 3 years. On the morning of the accident he had rolled about a dozen wheels through the opening, which was 2 feet wide at one part and 6 feet at another. There was a pump near the door about 18 feet from the lathe and about 75 feet from the rack. His wheel "wobbled" as he passed the pump and shot for the lathe and he could not stop it. He first observed the wheel sitting against the lathe when he scraped it and when he saw it come over on him.

One Littell hired and discharged the men and was the superior of French and plaintiff, but did not direct the manner of doing any particular work.

One Stephan, a timekeeper and checker, was the only witness to the accident.

It was in evidence that a rolling wheel is always unbalanced; that it takes an experienced man to guide them, and that it is necessary in handling them to reckon with the fact that they may get out of balance. This occasion, said plaintiff, was the first on which he had run into anything; had helped to unload about 25 carloads of wheels in all.

Defendant introduced certain plats and photographs showing the situation, which were admitted to be correct.

James W. French, a witness for defendant, testified he was a wheel man and had held that position with defendant for some 7 years knew plaintiff and saw him on the day of the accident. On that day plaintiff came to the Second street yards of defendant and told witness that one of the bosses had sent him over to help him unload a carload of wheels, and that he told plaintiff he did not need him and for him to go back; that when he got back from over there plaintiff was there and went to work and helped him. They fixed a place to put the wheels and then put up a run and started to unload them. When they got there there was one wheel in the rack. He (French) set it alongside the lathe with the flange next to the lathe and the bottom of the wheel about 8 or 9 inches from the bottom of the lathe, the wheel leaning against the pan of the lathe, which was about the middle of the hub of the wheel. It was so laid against the lathe that it could not easily topple over. It was set there so that they could "caliper" the wheel. They were going to fit the wheel up, meaning that they were going to bore it out, then turn the axle to fit the hole, and they wanted to get the size of the wheel in order to get another one of the same size to mate it. Witness testified that he was hired by Mr. Littell, who also hired his helper, and that he (witness) had no authority to hire or fire anybody and that he had never hired any one. Witness was in the car when he heard plaintiff halloo. When he got to plaintiff he was lying on the

floor with both wheels on him. Witness stepped "astrad-dle" of him and took hold of the bottom wheel and had Mr. Stephan, the timekeeper, take the top wheel off of him against the lathe, and they lifted the other one up. On cross-examination this witness testified that they had to get that wheel which they leaned against the lathe out of the way. It was in the rack. The reason witness put the wheel against the lathe was so that when he wanted to fit it up he would have it handy and he expected to use it Monday morning when he and his regular helper expected to go to work at the lathe. Mr. Littell had charge of but never run the lathe and was not a wheel man. He (witness) was the man who had charge of the work under Mr. Littell, who gave him blue prints to work by, and other details. Mr. Littell exercised authority over the management of the wheels when he was there. Witness bored wheels according to orders, and while Mr. Littell ordered him every time as to where he should get wheels, he did not direct the movement or the exact place where the wheels should be put. He (witness) was in charge of that, with his helper. The helper handled the wheels in his own way, although sometimes he would tell the helper to get a wheel; that "the place is there where to put it and it is no use to tell the helper" where to put it. Witness would not have to take the wheel away from the lathe before he could begin work and had put this wheel against the lathe as part of the work of boring wheels and fitting axles; placing the wheel against the lathe was part of the work of unloading the car because it was necessary to take the wheel out of the rack in order to unload the car. Witness had taken the wheel away from the rack in order to make room to place the wheels they were taking out of the car. The fact of placing the wheel against the lathe instead of some other place had nothing to do with the unloading of the car; in setting the wheel against the lathe he did not intend to move it; "that you will find a wheel sitting there any day in the week," said the witness; had never seen a wheel fall

on anybody before but had seen men knocked down when they got reckless; that however careful you are the wheels sometimes get away from you and they might run into something before you could catch them. He had examined this wheel that had been standing by the lathe after the accident and found a half-inch scar on it where it had been hit with plaintiff's wheel; that "it would take a pretty hard blow to make such a scar;" that wheels are dangerous to handle because they are apt to fall.

Mr. Littell, called for defendant, testified that he was general foreman in charge of defendant's shop, and hired and discharged and had supervision of all the men outside of the general offices. No one had this authority except himself. He assigned the men to their various tasks. About 7:30 on the morning of the accident he was going into the yard and met plaintiff, who said to him that there was a carload of wheels in and should he help Jim French unload them, and witness said: "That is all right." He sent plaintiff over to help French because there was nothing particular to do in the shop at that time. It was closed down and only the monthly men were kept that day and plaintiff being a monthly man he sent him over. The wheel men or axle turners had authority to unload the wheels— nobody else unloaded them. There was no boss in that department where the wheels were unloaded because no boss was needed and they had been doing that for years; that the custom had grown up to unload the wheels that way, that is, take them out of the car, put them in the shop and they were always unloaded by the wheel men or the axle men. These men had orders to unload all wheels and when the wheels came in they had to unload them. The employees of the mechanical department were authorized to come to him with any complaint or grievance. The custom was that before the wheels were taped up in the axle turning department to pile them behind the lathe—by the wall back of the lathe. They set the wheels with the flange on the inside in order to get the tape around and measure

them. Witness saw the wheel after the accident and it had a wheel flange mark on it made by a heavy blow. On cross-examination this witness testified that French was an axle turner in charge of that lathe and machinery at the time. Witness did not send plaintiff over on the morning in question. Plaintiff asked if he could go and witness told him it would "be all right." Plaintiff had no right to go to work there unless witness told him. French at that time was in charge of that work as an axle turner and wheel man in charge of that department. On former occasions plaintiff had occupied the same position as French and was familiar with the duties of the place. On the morning of the accident witness was in the yard and office and passed back and forth through the shop twice; did not particularly notice the wheel leaning against the lathe but it was his duty to see that the factory was in a safe condition for the employees, who were rolling wheels, and passing through the shop he went within 15 or 20 feet of the lathe and in full view of it. While he had charge of turning wheels and unloading wheels from the car, he was not, on this occasion, personally present; that it was French's duties to turn axles, press on wheels, bore out the wheels and unload wheels. When a carload of wheels came in French would unload them, which was a part of his duty. He did not have to tell him to unload the car. French had no regular helper but as a rule he had a helper who bored out wheels, and French would direct the helper; but the instructions given to French and plaintiff when they first started to work, when a car of wheels came in, were that the wheels that came out of a car should be put back of the lathe and when wheels were left in the rack to leave them there until they could use them. No wheels were being turned that day.

In rebuttal plaintiff testified that on the day of the accident, he had followed French up to where the wheel was standing on the west end and that French grabbed it and rolled it away. Plaintiff had nothing to do with moving the wheel and said nothing. French took the

wheel away and plaintiff saw him set it down but paid no attention as to how he set it.

This is substantially the material evidence in the case.

· At the close of plaintiff's ·evidence in chief and again at the close of all the evidence, defendant ·introduced demurrers, which were overruled.

Learned counsel for appellant, who have briefed and argued the case before us, did not participate in the trial. They make 9 assignments of error but argue only five and we will notice those.

After setting out in their brief the gist of the petition as to the assignment of negligence and saying that that is the sole assignment of negligence in the petition, learned counsel for appellant say:

"Apart from such general questions whether or not the act complained of was negligent, whether or not the evidence showed the plaintiff to have been guilty of contributory negligence or to have assumed the risk, the ·fundamental question upon which the trial below appears to have turned, was whether or not the placing of the wheel which caused the injury to plaintiff was, under the circumstances, the act of a fellow servant."

With this general and very fair statement of the issue, learned counsel for appellant make the proposition, that the dual capacity doctrine is the settled law of this State and that the claims of the defendant rest either upon the theory of distinct departments or upon the theory that the act complained of was the act of a vice-principal, and counsel for appellant claim that the men were associated in a common task and that, therefore, the demurrer should have been sustained.

We assume that counsel refer to the demurrer interposed at the close of the case. It has been ruled by our Supreme Court in many cases and, specifically, in Kame v. St. Louis & San Francisco R. Co., 254 Mo. 175, 162 S. W. 240, where a demurrer had been interposed at the close of plaintiff's case and then again at the close of the whole case (l. c. 189-90):

"An instruction in the nature of a demurrer to the evidence was asked at the close of plaintiff's case. Being disallowed, defendant marked the spot with an exception and now argues that the demurrer lay. But defendant did not stand on that demurrer; *contra*, it went on and put in its own proof. Authorities, from whatever angle they approach the subject, agree in holding in effect that where, following such overruled demurrer, another is offered at the close of the case, the latter searches all the evidence and that, for the practical administration of justice, the first no longer fills an office on appeal. It has been said that such demurrer is waived by defendant by the act of putting in its own proof. But if defendant's proof does not aid plaintiff's case in chief, it may be inexact to say that the demurrer is 'waived' under such circumstances. It is sufficient to hold that the exception saved on the first demurrer became *functus officio,* and the question on demurrer shifts to the second."

Taking up the proposition stated by learned counsel for appellant, as to the crucial point in this case, we hold that the demurrer at the close of the case was rightfully overruled. There was ample evidence in the case from which the jury could infer that the plaintiff, in carrying on the work in which he was engaged, was a subordinate to, a helper of French, his immediate superior; that he was sent to French to act as his helper and was engaged in the work in which he was injured while under the control and direction and management of French, the axle man. Even on the testimony of defendant, the jury might well arrive at the conclusion which they evidently did, that plaintiff, on this occasion was acting in a subordinate capacity to French and while so acting was injured.

The second point argued is that the first instruction given for plaintiff ignores vital issues, draws misleading distinctions and is erroneous. The same criticism is made of the second instruction given by the court at the instance of plaintiff. These are the second

and third points argued by learned counsel and we do not think them tenable.

It would serve no useful purpose to set out these instructions in full. It is sufficient to say of the first, that it told the jury, in substance, that if they found and believed from the testimony that French was an employee of the defendant at the factory where plaintiff was hurt, and by virtue of his employment and as part of his duties under such employment, had charge of the business of axle turning or preparing the wheels and axles for use, and had charge of the machinery then and there in defendant's factory for such business, and the operation of the machinery and work; and that if they further found that a part of the machinery was a certain lathe which was then and there stationed alongside or near the passage or way over which plaintiff, as defendant's employee, was put to work unloading a car of wheels; and that French, before actually beginning the work of unloading the car of wheels, took a certain large iron wheel which the jury may find afterwards fell upon plaintiff and hurt him, and removed the same from some other place in the shop or factory and placed it against the lathe in such position alongside and near the said passage or way as to endanger the safety of plaintiff while unloading the car in the usual and ordinary manner of doing such work, and if the jury further found that French so put the wheel against the lathe, and that such act was not a part of the work of unloading the car, but that French put the wheel there against the lathe as hereinabove set out for the purpose and with the intention of using the same in the work of preparing the wheels and axles in the operation of the machinery for that purpose, when he got ready to proceed with such work, then the act of French in putting the wheel against the lathe was not the act of a fellow servant of plaintiff, but was the act of the defendant. And that if the jury found and believed that, under such circumstances as above detailed, French placed the wheel against the lathe in a negligent and careless manner as defined in the instructions of the

court, and so as to endanger the safety of plaintiff while engaged in unloading the car in the usual and ordinary manner of doing such work, then such negligence of French in so placing the wheel, if you so find the facts, was not the negligence of a fellow servant, but the negligence of the defendant.

It is said of this instruction that it absolutely ignores any question of the relationship of plaintiff to the whole situation; that it asserts that, no matter what plaintiff was doing and how plaintiff was engaged with French at the time of the placing of the wheel against the lathe, plaintiff and French were not fellow servants, provided only that French had charge of the business of axle turning and the operation of the machinery in the shop for that work and that French, before the actual work of unloading the car was begun, placed the wheel against the lathe with the secret and uncommunicated intention on his part of using the wheel at some future time in his work on the lathe; and it is also said that this instruction further totally ignores any issue raised by the evidence as to the existence or non-existence of any relationship on the part of French toward plaintiff and draws a misleading distinction and invites the jury to draw a misleading distinction, not justified by the evidence, between the preparatory work of clearing the rack in which to store the wheels from the car and the actual beginning of the work of unloading the car.

We do not think that any of these criticisms are substantial or that this instruction is liable to any such construction. On the contrary we think it is an exceedingly fair and accurate statement of the law as applicable to the case.

As to the second instruction, it is said that the jury were directed, in effect, that if French was employed by defendant and had charge of the direction of the work of unloading the car of wheels and transferring the wheels to the factory; and that as a part of his duty, French took charge of and was intrusted by defendant with the charge and direction of making necessary and proper preparations and arrangements of the factory

for the work of unloading the car and transferring the wheels to the factory; and that while so making or directing the making of such preparations and arrangements, and as a part of them, French moved an iron wheel in defendant's factory (not one of the wheels to be unloaded) and placed the wheel alongside or near the passage or way over which plaintiff, with the knowledge of French, was expected to work; that French was guilty of negligence in the manner of placing the wheel, then the act of French in placing the wheel was the act of the defendant. Even with this construction on the instruction, and that is not accurate, we find no fault with it. On the contrary, it clearly and distinctly covered the facts in the case so far as this particular issue is concerned. It is clear on the evidence, that French was intrusted by defendant with the charge and direction of making necessary preparations and arrangements to unload the car. It is further in evidence that while he was making these arrangements and preparations, he moved the wheel alongside the passageway and, regardless of everything else, it was for the jury to determine, and on that they were properly instructed, as to whether that was the act of the master. We see no error in either this first or second instruction.

Learned counsel cite Hall v. Manufacturers Coal and Coke Co., 260 Mo. 351, 168 S. W. 927, in support of their attack on this second instruction. We do not think that that authority sustained their position.

The fourth point made is the alleged error of the court in giving the jury plaintiff's instruction No. 4, as to which it is said that, in effect, it tells the jury that the defendant owed to plaintiff a duty to provide him with a reasonably safe place to work, as defined in the other instructions of the court; and it is claimed that it is misleading in that it applies and conveys the idea of absolute duty to provide a reasonably safe place to work; and it is further complained of that, in common with nearly all the other instructions for plaintiff, it refers for definition to the other instructions of the court. "Such references," it is said, in this and other

instructions are so indefinite as to be unclear and misleading. We are unable to see the force of this objection.

In this fourth instruction the court told the jury that plaintiff, by virtue of his employment, assumed only the natural and ordinary risks incident to the performance of the work to which he was put, after the defendant, as his employer, had performed its duty of care to furnish him a reasonably safe place to work, as defined in other instructions of the court; but plaintiff, by virtue of his employment, assumed no risk or danger which arose from or was caused by negligence on the part of defendant as his employer, and the instruction concluded:

"And so, if you find that the defendant *negligently failed to provide plaintiff,* as its employee, *with a reasonably safe place* in which to do his work, in *negligently* placing a large wheel along the passage or way over which plaintiff was working, *as such negligence is defined in the other instructions of the court,* and that such *negligence* in the manner of placing such wheel caused an extraordinary danger or risk to plaintiff while doing his work, then that danger or risk was not one which plaintiff assumed by reason of his employment."

There is no complaint of this in so far as it covers assumption of risk.

It is true that the court used the word "negligently," without defining negligence, in this instruction, but in instruction numbered 7, given at the instance of defendant, the court distinctly told the jury, "By the term 'negligence' is meant a failure to exercise that degree of care that a person of ordinary prudence would exercise under the same or similar circumstances."

This instruction is to be read in connection with the other instructions and properly placed the case before the jury on the question of negligence.

The instructions, taken together, present harmoniously and consistently to the jury the respective theories

of the two contesting parties and that is all that is required of instructions as long as they were not contradictory, or as long as an element necessary to recovery was not omitted. We find no such error in these instructions. Considered as a whole, the instructions here given at the instance of plaintiff, supplemented as they were by those for the defendant, fairly cover the case, and we find no inconsistency or omission to the prejudice of defendant in them. It was said by our Supreme Court in Schroeder v. Michel, 98 Mo. 43, l. c. 48, 11 S. W. 314:

"If the qualification of the instruction complained of appears elsewhere in a form fairly bringing it to the attention of the jury as a modification of another, the judgment will not, on that account, be reversed."

That has long been the law of our State. Learned counsel for appellant cite one case in support of their proposition that it is error in one instruction to refer to others. The only case they cite in support of that for this proposition is Drumm-Flato Commission Co. v. Gerlack Bank, 92 Mo. App. 326, erroneously cited as page 33. On page 333 of that case it is said:

"The modification in plaintiff's fourth instruction was proper, but it is defective in not specifying with more particularity the instruction to which it referred as constituting an estoppel."

We do not think that this sustains plaintiff's contention, and we know that it is a common practice, sanctioned by a long line of decisions, to refer in one instruction to another, and the rule is undoubted that the instructions are to be considered as a whole and are to be sustained, if not contradictory, or if not omitting a material element in the case.

The final point urged by learned counsel is placed in this way: "It seems manifest to us that instruction No. 1, given for the plaintiff, is inconsistent and conflicts with instruction No. 1, given to the jury for defendant." Examining the two we cannot find any such

conflict or inconsistency. They covered different propositions or phases of the case.

Learned counsel for appellant devote much of their argument to what is called "the departmental doctrine." It is true that it appears that the regular employment of plaintiff was in the carpenter department of the defendant, not in the mechanical department, the one in which he was working at the time of the injury. But this so-called departmental doctrine is not the one upon which the case turned nor is it relied upon by plaintiff. He did not cast his lines of battle on any such theory.

In meeting the main issue learned counsel for appellant puts it in this way:

"Even if the position should be asserted that there is sufficient evidence in this record to justify the holding that French occupied a superior position, the real difficulty which remains to confront the plaintiff is that the act done by French, namely: the moving and placing of the wheel, was an act done in his capacity as a servant; that French removed the wheels from the rack at the same time that plaintiff was removing the blocks from the rack; that they were engaged in a common and coassociated work together, at the same time and to a common end, that the act of moving the wheel by French was not an act of direction, management or control, but was an act of manual labor of precisely the same species as was then being performed by the plaintiff; and that for the negligence of French in performing such act, the master is not responsible."

Counsel then say: "While it is difficult to find authorities squarely on all fours with the precise facts in any given negligence case, the following cases illustrate the principle," and they then cite Lee v. Detroit Bridge & Iron Works, 62 Mo. 565, l. c. 567; Stephens v. Deatherage Lumber Co., 110 Mo. App. 398, l. c. 567, 86 S. W. 481; Rodgers v. Schiele, 148 Mo. App. 53, 127 S. W. 618; Dickinson v. Jenkins, 144 Mo. App. 132, 128 S. W. 280; Hawk v. McLeod Lumber Co., 166 Mo. 121, 65 S. W. 1022; Padgett v. Scullin-Gallagher Iron & Steel

Co., 160 Mo. App. 544, 140 S. W. 934; Richardson v. Mesker, 171 Mo. 666, 72 S. W. 506; and English v. Roberts, Johnson & Rand Shoe Co., 145 Mo. App. 439, 122 S. W. 747. A vast array of authorities from other States are then cited. While it may be that we cannot find a case on all fours with the facts before us, we think that our appellate courts have passed on the question determining the principle to which we can look for our guidance without rendering it necessary to resort to the decisions of other States, however respectable they may be.

In Koerner v. St. Louis Car Co., 209 Mo. 141, 107 S. W. 481, our Supreme Court, speaking through Judge GANTT, after referring to the diversity of opinion as to who are in different departments and who are fellow servants, observes (l. c. 151 and following):

"Much of the difficulty has arisen from the inability of the courts to determine at all times whether the employment was a common service and the employees fellow servants within the meaning of the rule itself. We are aware that it is insisted that the courts ought to be able to so express the rule that all cases can be weighed and gauged by it. But we are of the opinion, after long consideration, that unsatisfactory as it might seem, the rule itself must remain *general* and its application *specific* as the cases arise."

Later, Judge LAMM, speaking for our Supreme Court in Strother, Admr., v. Kansas City Milling Co., 261 Mo. 1, 169 S. W. 43, after concluding in that case that the doctrine of fellow servant does not bar recovery as a matter of law, has said (l. c. 16):

"It would be unprofitable to reagitate the vexed question: Who is a fellow servant? Or to reformulate or reannounce the doctrine of this court in that behalf. Error often lurks in generalities and no rule can be laid down that would fit all cases. It would be a bold judge who said that appellate courts had always been able to hold a steady and even voice in promulgating or applying general principles on this head."

We have read all of the Missouri cases cited by counsel for appellant on this point. None of them, on their facts, in our judgment, directly fall within the facts in the case at bar. Here the evidence tended to show that French, the immediate superior over plaintiff in the work in which he was engaged preliminary to doing the work of unloading the car, had removed a wheel from a rack in which it had been standing to place it where it could be conveniently reached on the following Monday, when he intended to work on it. It had not been taken from the car in the unloading of which plaintiff was engaged. French placed it at such a point and in such a position as to render the pathway through which the plaintiff was to roll the wheels unsafe and dangerous. The duty of providing a safe place to work is a nondelegable duty, for the wrongful execution of which the employer is responsible. [Zellers v. Missouri Water & Light Co., 92 Mo. App. 107, l. c. 117, and authorities there cited.] Whether French was a fellow servant with plaintiff or a vice-principal was a question for the jury. [Radtke v. St. Louis Basket & Box Co., 229 Mo. 1, l. c. 24, 129 S. W. 508.]

The dual capacity doctrine has always been recognized by our courts. In Moore v. Wabash, St. Louis & Pacific Ry. Co., 85 Mo. 588, quoting from the syllabi, it was ruled:

"They are fellow servants who, under the direction and management of the master himself, or of some servant placed by the latter over them, are engaged in the prosecution of the same common work without any dependence upon or relation to each other except as colaborers without rank.

"He is a vice-principal who is intrusted by the master with power to superintend, direct or control the workman in his work, and for negligence in such superintendence, direction or control, the master is liable."

The principle of that case has been accepted and adopted in many subsequent cases, as see Burkard v. A. Leschen & Sons Rope Co., 217 Mo. 466, l. c. 482, 117 S.

W. 35, and cases there cited. [See, also, Radtke v. St. Louis Basket & Box Co., supra.] The cases relating to it are so thoroughly compiled by my brother ALLEN in Mertz v. A. Leschen & Sons Rope Co., 174 Mo. 94, 156 S. W. 807, that it is unnecessary to repeat them.

Applying the principle announced in the above cases as that to govern this, and even there, as said by Judge LAMM, in the Strother Case, supra, error often lurks in the attempt at generalization, we can come to no conclusion but that the plaintiff here and French were not fellow servants but that French was his superior in the direction and carrying out of that branch of the work in which they were engaged, and so vice-principal for defendant. His wrongful or negligent act, in rendering the place to work unsafe, resulting in injury to the plaintiff, is chargeable to the defendant. [White v. Montgomery Ward & Co., 191 Mo. App. 268, 177 S. W. 1089.] While the negligence of French, if any, purely in his capacity as fellow servant, would not entail liability upon the defendant, if such negligence is combined with negligence on his part in the capacity of a vice-principal, the latter being the efficient cause of the injury, the master is liable. [Rigsby v. Oil Well Supply Co., 115 Mo. App. 207, l. c. 314, 91 S. W. 460, and cases above cited.]

Finding no error to the prejudice of the appellant, the judgment of the circuit court is affirmed.

*Allen, J.,* concurs in the result in a separate opinion, in which *Becker, J.,* concurs.

## SEPARATE CONCURRING OPINION.

ALLEN, J.—I concur in the result reached by my Brother REYNOLDS herein for reasons which I shall attempt to briefly state. I think that the demurrer to the evidence was properly overruled for the reason (which I think is the true ground for holding the defendant liable) that the evidence suffices to support the conclusion that defendant was remiss in respect to the

203 M. A.—35

duty which it owed plaintiff to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work, and to keep that place safe. In view of the nature of the work in which plaintiff was engaged, i. e. in rolling large heavy car wheels, having flanges, through this narrow passageway, it may be readily found that the presence of a car wheel placed at one side of the passageway, in such position as to be unstable and likely to fall if struck or scraped by a rolling wheel, as shown by plaintiff's evidence, was a thing which rendered plaintiff's place to work not a reasonably safe one. It was the nondelegable duty of defendant to exercise ordinary care to keep the place reasonably safe for the performance of the task in which plaintiff was engaged; and the evidence warrants the finding that defendant breached its duty in this regard. Plaintiff's evidence tends to show that, though French also rolled wheels, plaintiff was performing his duties under the direction and control of French, as the master's representative; and under such circumstances it was the duty of French to see that the place where plaintiff was thus required to work was kept reasonably safe. This, indeed, is a personal duty which the master cannot delegate so as to escape liability in case of an injury by reason of its nonperformance. [White v. Montgomery, Ward & Co., 191 Mo. App. 268, and cases cited, 177 S. W. 1098; Chulick v. American Car & Foundry Co. (Mo. App.), 199 S. W. 437.] In the instant case it seems quite clear that the evidence amply warrants the inference that French was the *alter ego* of defendant, having full charge of the work and control over the place where it was being performed. And if he was a fellow servant of plaintiff in respect to the manual work of rolling wheels, that is not a matter here of consequence, since it is clear that plaintiff's injury did not occur from any negligence of French in that capacity.

In this view the instructions appear to be free from prejudicial error; and the judgment should consequently be affirmed.

*Becker, J.,* concurs in these views.